JUDGEMENT
MARK BUTTERFIELD, Chief Judge.
PROCEDURAL HISTORY
This case is an election dispute over the “certification” of the outcome of the September 13, 1997 Special Election to fill the Area V Legislative seat created by the resignation of Christine Steeples on August 19, 1997. The HCN Constitution allows any elector to challenge the outcome of a Ho-Chunk Nation Election so long as they do so within ten (10) days of the certification of the Election. See, HCN Const. Aut. VIH S 7. Mr. Mudd, the challenger, filed his challenge on September 18, 1997 within the ten days allowed. The HCN Election Board filed its Answer on September 22, 1997, within the five *204 days permitted it under the Special Election Summons it received.
The HCN Election Board then moved for Summary Judgement on September 22, 1997. The Court held a scheduling hearing on September 23, 1997 where the parties stipulated to the facts and agreed to have oral argument on the essential legal dispute regarding “majority vote” on September 30, 1997. The hearing was held and the case is now ripe for decision.
APPLICABLE LAW
HCN Const. Art. V § 6 Terms of Office.
Members of the Legislature shall serve four (4) year terms which shall be staggered. Legislators shall represent their respective Districts until their successors have been sworn into office except if the Legislator has been successfully removed or recalled in accordance with this Constitution. Members of the Legislature shall be elected by a majority vote of the eligible voters from their respective Districts. (Italics added)
HCN Const. Art. VII § 5. Jurisdiction of the Judiciary.
(a) The Trial Court shall have original jurisdiction over all cases and controversies, both criminal and civil, in law or in equity, arising under the Constitution, laws, customs, and traditions of the Ho-Chunk Nation, including cases in which the Ho-Chunk Nation, or its officials and employees, shall be a party. Any such case or controversy arising within the jurisdiction of the Ho-Chunk Nation shall be filed in the Trial Court before it is filed in any other court. This grant of jurisdiction by the General Council shall not be construed to be a waiver of the Nation’s sovereign immunity.
(b) The Tribal Court shall have the power to declare the laws of the Ho-Chunk Nation void if such laws are not in agreement with this Constitution.
§ 6. Powers of the Tried Court.
(a) The Trial Court shall have the power to make findings of fact and conclusions of law. The Trial Court shall have the power to issue all remedies in law and in equity including injunctive and declaratory relief and all writs including attachment and mandamus.
(b) The Trial Court shall have the power to declare the laws of the Ho-Chunk Nation void if such laws are not in agreement with this Constitution.
HO-CHUNK NATION CONSTITUTION, ART. VIII
§ 1. General Elections. General Elections shall be held on the first Tuesday in June of odd numbered years. Offices of the Legislature, Executive, and Judiciary shall be filled at General Elections.
§ 2. Special Elections. Special Elections shall be held when called for by the General Council, the Legislature, or by this Constitution or appropriate ordinances. In all Special Elections, notice shall be provided to the voters.
§ 7. Challenges of Election Results. Any member of the Ho-Chunk Nation may challenge the results of any election by filing suit in Tribal Court within ten (10) days after the Election Board certifies the election results. The Tribal Court shall hear and decide a challenge to any election within twenty (20) days after the challenge is filed in Tribal Court.
§ 8. Oath of Office. The Election Board shall administer the oath for the offices of President, Legislature and Judiciary on the 4th Wednesday following the election after the Election Board certifies the Election results.
*205 § 10. Vacancies in the Legislature. If a vacancy occurs in the Legislature because of death, mental or physical incapacity, removal or recall vote, or for any other reason, such vacancy shall be filled in the following manner:
(a) If three (3) months or more remain before the next General Election, the Election Board shall call a Special Election in the appropriate District to be held within thirty (30) days.
(b) If less than three (3) months remains before the next General Election, the seat shall remain vacant, except when the Vice President assumes the office of the President pursuant to Section 9(b) of this Article, an election to fill that vacancy
FINDINGS OF FACT
1. On August 19, 1997 Christine Steeples, Legislator for Area V of the Ho-Chunk Nation, resigned from office, effective immediately.
2. On September 13, 1997, the HCN Election Board held a Special Election to fill Ms. Steeples’ Area V seat pursuant to HCN Const. Art. IX § 10(a).
3. On September 15, 1997 the HCN Election Board certified the results of the Special Election of September 13, 1997.
4. The results of the election were that of the 180 votes cast Harry Steindorf received 50, Sharyn Whiterabbit 35, Terrance Johnson 26, Jean Day 25, Mary Ann Yazzie 19, Rosetta Hunt 17, Elaine Bear 2 and there were six write-in votes to five candidates. See, Exhibit A. A majority of the votes cast would be 91 votes.
5. The HCN Election Board met on September 15 and certified Harry Stein-dorf as A'ea V Legislator. See, Exhibit B. The Election Board also stated in its minutes that it would accept the result of Harry Steindorf “by plurality of the September 13, 1997 Special Election.” It advanced two reasons for this. The first was that Shirley Lonetree was elected in a Special Election by less than a majority and second that A*ea V lacked representation at the time of the election. Id.
6. The Court takes judicial notice of the fact that Aea V was without representation due to the removal of Diane Lone-tree for malfeasance and the additional resignation of Marlys WhiteEagle both Legislators for A’ea V.
7. Jacob Lonetree was elected in a Special Election to replace the removed Chloris A. Lowe Jr. as President of the Ho-Chunk Nation in June 1997. Mr. Lowe’s term had two years to go. Mr. Lonetree had to go through both a primary and a runoff election whereby his election was secured by 50% +1 of the voters casting ballots.
8. If the Election Board were correct in its certification Mr. Steindorf must be sworn in on October 8,1997.
9. The final day for decision in this case is October 7, 1997.
10. Mr. Robert Anthony Mudd is a HCN member and Legislator from Aea I of the Ho-Chunk Nation representing members in Jackson, Clark and Eau Claire Counties.
11. Shirley Lonetree was elected to serve out the remainder of Byron Thundercloud’s term as A’ea IV Legislator in the spring of 1997. Ms. Lonetree’s term of office expired with the swearing into office of Gerald Cleveland Sr. and Kevin Greengrass. Ms. Lonetree was not reelected to office and her term expired in early July 1997. No election case was ever filed challenging Ms. Lonetree’s election despite the fact she did not receive greater than 50% of the votes cast.
*206 12. Wade Blackdeer was elected to fill the seat vacated by the removal of James Greendeer as Legislator for Area II. Wade Blackdeer was sworn into office after having received greater than 50% of the vote in the Special Election called by the Election Board on June 3,1997.
DECISION
This is an election dispute case. The case concerns the holding of a Special Election to fill a seat vacated by the resignation of a Legislator elected in the June 1997 General Election. Christine Steeples was elected to a seat representing District V, the “at-large” district consisting of all HCN electors outside of the 14 county home territory of the Ho-Chunk Nation. It is undisputed that she resigned on August 19, 1997 and it was accepted by the HCN Legislature. A Special Election was scheduled on September 13, 1997 to fill that vacancy. In the time between her resignation and the September 13, 1997 election Marlys WhiteEagle resigned her position as a Legislator for District V and Diane Lonetree was removed as a Legislator for District V on September 3, 1997 by the HCN Legislature.
The election took place as scheduled. The top two vote getters were Harry Steindorf with 50 votes out of 180 and Sharyn Whiterabbit with 35 votes. The Election Board met on September 15 and certified the winner as Harry Steindorf, despite the fact he did not receive a numerical majority of the votes actually cast. Mr. Mudd a Legislator from Area I filed suit to declare this decision of the HCN Election Board as violative of the “majority vote” requirement by which he and all other currently serving Legislators were elected.
I. MAJORITY VOTE IN SPECIAL ELECTIONS
The principle contention between the parties is that the Election Board certified and intends to swear into office a candidate who admittedly has not received greater than 50% of the votes cast in the election. The HCN Election Board contends in its defense that, despite abundant case law to the contrary, that there is a distinction between Legislators elected in Special Elections and those elected in General Elections. See, Robert, L. Funmaker, Jr. v. HCN Election Bd., CV 95-04 (HCN Tr. Ct. July 6, 1995); Gail Funmaker v. HCN Election Bd., CV 95-10 (HCN Tr. Ct. July 7, 1995) (HCN Const. Art. V. § 6 “means greater than 50% of the votes actually cast in the legislative district election in contention.”). In several companion cases the Court upheld that same principle as applied to the President, Jo Ann Jones v. HCN Election Bd. And Chloris A. Lo-we Jr., CV 95-05 (HCN Tr. Ct. July 6, 1995) and Janet Muir v. HCN Election Bd. CV 95-06 (HCN Tr. Ct. July 7, 1995), and to Justices, Dennis and Wally Funmaker v. HCN Election Bd., CV 95-09 (HCN Tr. Ct. July 7, 1995).
The Board further contends that where there is ambiguity it has the authority pursuant to the Election Ordinance to interpret the Election Ordinance and fill in the gaps and that its interpretation is not unreasonable. Furthermore, it claims that the only authority to order a run-off election exists in the case of a tie vote pursuant to HCN Election Ordinance § 2.01(c). The Election Board argues that there is a difference between Special Elections called to fill a vacant position due to resignation or removal from General Elections and the Court’s previous rulings in Robert L Fun-maker Jr. v. HCN Election Bd, CV 95-04 (HCN Tr. Ct. July 6, 1995) and Gail Fun-maker v. HCN Election Bd., CV 95-10 (HCN Tr. Ct. July 7, 1995) only apply in the General Election context.
The Board further attempts to make a distinction based on the requirement that *207 a Special Election for a vacant seat must be conducted within 30 days. HCN Const. Art. VIII § 10(a). The Election Board urges an interpretation which mandates that a Legislator-elect be finally selected within 30 days. Repeatedly, at oral argument the Election Board urged an interpretation that consideration of the then existing vacancy was an appropriate factor in interpreting majority vote as meaning “plurality vote” rather than the Court’s interpretation of majority vote in HCN Const. Art. V. § 6 that it means greater than 50% of the votes actually cast.
However, the Election Board misread that section of the HCN Constitution which actually states that the Board “shall call a Special Election in the appropriate District to be held within thirty (30) days.” Id. As the Court has repeatedly pointed out the HCN Constitution must be read in its entirety and not in isolation. A proper reading of the HCN Constitution must reconcile all relevant sections to give them effect. See, Coalition for Fair Government II v. Chloris A. Lowe Jr. et al, CV 96-22 at 11 (HCN Tr. Ct. May 21, 1996) (defendant must reconcile three clauses in the Constitution), affd, Coalition for Fair Government II v. Chloris A. Lowe Jr and Kathy leen Lonetree Whiter-abbit, SU-02 (July 1, 1996). Here the Election Board does violence to a previously rendered binding decision regarding HCN Const. Art. V § 6 (majority vote of eligible voters from District means greater than 50% of votes actually cast) in rushing to fulfill its conflicting interpretation of HCN Const. Art. VIII § 10(a) (Special Election to fill vacant seat must be called in 30 days). Interpretations of one part of the Constitution which would undermine other parts are disfavored. A proper interpretation must give full force to each part of the Constitution as is possible. The Election Board, however, would nullify the majority vote provision by an interpretation requiring selection of a Legislator in 30 days.
The Election Board is wrong. This Court stated in a binding decision upheld on appeal that majority vote under HCN Const. Art. V. § 6 meant greater than 50% of the votes in the respective district that were actually cast. Gail Funmaker v. HCN Election Board, CV 95-10 at 4 (HCN Tr. Ct. July 7, 1995), aff'd sub nom, Jones v. HCN Election Board and, Lowe, CV 95-05 (HCN Sup.Ct. Aug. 15, 1995). The Election Board improperly considered the unusual fact that all three seats for the “at large” district, District V, were vacant in reaching its strained interpretation that “majority vote” means “plurality” in Special Elections. It repeatedly urged an arbitrary and capricious interpretation that Special Elections created an exception and that the “unrepresented” citizens of District V should have someone sworn in right away despite the lack of majoritarian support.
The problem with the Election Board’s interpretation is first that it ignores binding precedent, and second it badly misreads HCN Const. Art. IX § 10 in requiring that a winner be chosen within 30 days. That section only mandates that a Special Election be held within 30 days of the vacancy. The Constitution is silent on how fast the position might be filled. There is a reason for this. First, assuming that a candidate wins by greater than 50% of the votes actually cast they must still wait another four weeks prior to being sworn in. Thus, it is simply impossible for a candidate to be sworn into office within 30 days. See, Tracy Thundercloud v. HCN Election Bd., CV 95-016 (HCN Tr. Ct. Aug. 28, 1995). Moreover, the Constitution gives the right to all electors to challenge elections. This process, though expedited, requires a minimum of 20 to 30 *208 days to complete. Second, should no candidate win a majority of the votes actually cast, past precedent requires a run-off between the top two vote getters. Ti-ue, this costs resources of the Election Board and of the Nation but it insures that all Legislators are elected by the same electoral process and garner majority support of those who vote.
The Election Board rather disingenuously cited the election of Shirley Lonetree as precedent for a person elected only by a plurality. Yet this election was not challenged. Thus, it urges its own non-compliance with the majority vote requirement to mean “plurality” in its defense. However, as the plaintiff so ably pointed out, the Election Board did not follow its own Shirley Lonetree precedent in the Special Election to fill the vacancy created by the removal of Chloris A. Lowe Jr. by the General Council of January 11, 1997. For that vacancy, the Election Board held both a primary and a run-off. President Jacob Lonetree was elected as a result of a majority of votes actually cast. All but the top two candidates were eliminated. The Election Board’s own inconsistency dooms its position.
Yet, a further reason to reject the position of the Election Board is that if followed, it would create “second elass” Legislators—ones not elected by a majority, but a mere plurality. All of their colleagues could rightly point out that they were not even supported by the majority of the people in their district, especially if the plurality is so divided that one might “win” with only 19% or less of the vote. This is less than one in five of those casting votes. This sets such “plurality” Legislators up for strife and possible failure with little political support. This was the precise reason the voting requirement was changed under the new HCN Constitution from the Wisconsin Winnebago Constitution from plurality to majority. See, Jones v. HCN Election Bd. and Lowe, CV 95-05 (HCN Tr. Ct. July 6, 1995), aff'd, (HCN Sup.Ct. Aug. 15, 1995).
By creating second class Legislators, the Election Board undermines the democratic principles enshrined in the HCN Constitution. The plurality position taken by the Election Board weakens the position of any Legislator so elected and, rather than help members from District V have a voice at the Legislature, instead casts a pall over their Legislator’s right to be seated. As was pointed out by the Trial Court and the Supreme Court there is a proper method to change the Court’s majority vote interpretation, but this is by amending the HCN Constitution through the democratic method of a Secretarial Election not by willful action which attempts to reverse a Court ruling by arbitrary decision making.
Counsel for the HCN Election Board ably attempted to recast the Election Board’s position into one more reasonably supportable by law. The problem is that the Election Board did not advance many of the rationales articulated by Counsel in the official minutes of the meeting where they certified Hairy Steindorf to be the winner of the September 13, 1997 Special Election. The Court does not take seriously these positions but rather sees them as post hoc rationalizations not entitled to deference. See, Exhibit B. In Exhibit B the Election Board nakedly states that it accepts the election of Harry Steindorf “by plurality.” No where does it articulate that plurality equals majority or the reasons why that position is taken. This is arbitrary and capricious and an abuse of discretion. The sole reason advanced for its position is expediency.
The Election Board has created by its very stubborn resistance to the majority vote inteipretation handed down by the Courts in 1995 a situation that should have *209 been settled two years ago. The Election Board could have already held a run-off election in this case.[1] Instead, it continues to urge a position long rejected. By doing so it shows contempt for the constitutional process which places the Courts as the primary interpreter of the Constitution. This undermines both the Constitution and the rule of law.[2]
The Court has previously cautioned this same agency, the HCN Election Board, that expediency is an improper consideration to seating a Legislator-elect or President-elect before their time. See, Tracy Thundercloud v. HCN Election Bd., CV 95-016 at 5 (HCN Tr. Ct. Aug. 28, 1995). “Speeding things up to achieve a desirable end still violates the Constitution, which is the ‘Supreme Law over all territory and persons with the jurisdiction of the Ho-Chunk Nation’.” Id. (quoting HCN Const. Art, III § 4). It nevertheless advanced expediency as the sole reason in declaring Mr. Steindorf the winner without a run-off. This is improper. Mr. Steindorf only received 50 of 180 votes cast. This is only 27.78% of the votes. This is not more that 50% of the votes actually cast. The Court held in unmistakable terms what majority vote meant in all the Election cases of 1995. Majority vote is greater than 50% of the votes cast under HCN CONST. ART. V. § 6. The Court is bound by that decision and that of the HCN Supreme Court in Jones v. HCN Election Bd. and Lowe, CV 95-05 (HCN Sup.Ct. Aug. 15, 1995) which upheld it.
 To the extent the Election Board cites to the HCN Election Ordinance § 11,12 as giving it the authority to make interpretations of the Constitution, that authority is tempered by binding precedent and the HCN Constitution itself. It is further tempered by the fact the Constitution gives ultimate authority to interpret the Constitution to the Judiciary. See, Coalition for Fair Government II v. Lowe and Whiterabbit, CV 96-22 at 12 (May 22, 1996). The Election Board is without authority to render interpretations contrary to the Constitution or existing law. To the extent the HCN Election Ordinance allows for a run-off in a Special Election only in the case of a tie, see, HCN Election Ord. § 13.01(a), it is superseded by the Constitution and must yield to it. Furthermore, that section which purports to limit Judiciary authority to review election matters by stating the decision of the Election Board is final is contrary to the HCN Constitution which specifically permits dispute of elections to be resolved by the Courts. See, HCN Election Ord. § 11. 12, contra, HCN Const. Art. VIII. § 7. Therefore pursuant to the Court’s authority in HCN Const. Aut. VII. § 6(b) the Court finds HCN Election Ord. § 11.12 an unconstitutional attempt to limit the relief expressly permitted by the Constitution in HCN Const. Art. VIII. § 7.
II. REMEDY
In such a situation the Ho-Chunk Constitution requires a run-off. The Court ordered such a run-off in 1995 and was upheld by the Supreme Court of this Nation as being within its authority under the Court’s remedial powers. See, Id. at *210 6. Having such a runoff would be a constitutional way of reconciling the need for a majority vote with expediency. The Election Board need not go through the elaborate scheme of posting voter lists and allowing challenges to voters, etc. when conducting a run-off unless it felt this compelled by the HCN Election Ordinance.
The Court was asked at oral argument to grant an injunction to the swearing in of Harry Steindorf as a Legislator on October 8, 1997. Given the above interpretation that Mr. Steindorf, through no fault of his own, was not elected by a majority of those casting ballots, that injunction is granted until either he or another is elected by a majority vote.
CONCLUSION
The Court concludes that the interpretation of the constitution not requiring greater than 50% of the votes actually cast to seat a Legislator in a Special Election violates binding precedent and is arbitrary, capricious and an abuse of discretion by the Election Board. By declaring Harry Steindorf the winner of the September 13, 1997 Special Election, which it admitted was by a plurality, the Election Board is in violation of the HCN Constitution and its action to seat him as a Legislator is void until and unless he garners greater than 50% of the votes actually cast. The scheduled swearing-in is hereby enjoined.
Any other actions of the Election Board would be lacking in legality and would taint the electoral victory of any person sworn into office under such circumstances.[3] There is a right way and a wrong way to change how things are done constitutionally. The Election Board’s arbitrary action is the wrong way. Seeking to amend the Constitution through a Secretarial Election is the right way. Neither the Election Board, the Legislature, the President nor the Courts may ignore binding interpretations of the HCN Constitution.
Therefore, the Court orders that a runoff election be held pursuant to the “majority vote” requirement of the HCN Constitution, Art. V, § 6 between the top two vote getters of the September 18, 1997 Special Election.

. In all likelihood the Election Board could have had a run-off within two weeks of the original vote, even giving room for election challenges to be filed.

. In light of this repeated resistance, the Court recommends the HCN Legislature to call the Election Board members before it to reaffirm their commitment to impartially follow the law. It appears apparent here, as in the Thundercloud case, that the Election Board is favoring some candidate over others and failing to be uphold the appearance of impartiality so important to the electoral process.

. Anything done by improperly installed officials would then be subject to challenge on the basis they had no power to act. See, Thundercloud at 4.