*213 ORDER
(Election Challenge)
AMANDA L. ROCKMAN, Associate Judge.
INTRODUCTION
The Court must address an election challenge to the July 30, 2013 Special Runoff Election for District V Legislator Seat # 3. The Court convened Trial to determine the merits of the petitioner’s election challenge. The petitioner’s legal arguments were not sufficient to sustain the challenge, causing the Court to enter a judgment in favor of the respondent. Further analysis of the Court follows below.
PROCEDURAL HISTORY
The petitioner, Joann Earth Maney, initiated the current action by filing a Petition for Administrative Review with the Court on August 8, 2013.[1] Consequently, the Court issued Summons accompanied by the above-mentioned Petition on August 8, 2013, and delivered the documents by personal service to the respondent’s representative, Ho-Chunk Nation Department of Justice (hereinafter DOJ).[2] The Summons informed the respondent of the right to file an Answer within five (5) calendar days of the issuance of the Summons pursuant to HCN R. Civ. P. 5(B). The Summons also cautioned the respondent that a default judgment could result from failure to file within the prescribed time period. Summons and copies of the petition were also served to the respondent Election Board, Judy Whitehorse (the Chairperson of the Election Board), and interested party Robert Two Bears on that date.
The Court served a Scheduling Order and Notification to Interested Individuals on August 12, 2013. On August 13, Attorney Jeffery Rasmussen entered his appearance on behalf of the respondent, and filed a timely Answer, which in turn included Exhibits 1, 2, and 3. On August 16, the petitioner served interrogatories to the respondent and answered the respondent’s interrogatories. On the same day, the Court issued Trial Subpoena Duces Te- *214 cum on Melissa Olvera, Robert Two Bears, Kathyleen Lonetree Whiterabbit and Judy Whitehorse. The Court also held a PreTrial Hearing on August 16 at 1:30 PM.
The respondent also filed a Motion to Dismiss or alternatively Trial Brief on August 16; within this document was incorporated a motion for Summary Judgment. The petitioner’s Reply, Trial Brief followed on August 20, 2013. On August 22 at 10:00 AM, the Court held a Motion Hearing at which both parties argued from their briefs.[3] Petitioner and respondent both appeared in person, while Robert Two Bears appeared by telephone. Trial date was previously set on August 16, 2013, however a Notice of Hearing was then served to petitioner, Joann Maney; respondent, Election Board; respondent’s counsel; and interested party, Robert Two Bears on August 26, 2013. On August 26, 2013, the Court held its Trial at 11:00 a.m.[4] The following parties appeared at Trial: the petitioner, Joann Maney, the respondent, Election Board, by and through its Attorney Jeffrey Rasmussen, and interested party, Robert Two Bears.
APPLICABLE LAW
CONSTITUTION OF THE HO-CHUNK NATION (Reprinted Apr. 11, 2013)
ARTICLE VIII—ELECTIONS
Section 6. Certification of Election Results.
The Election Board shall certify election results within three (3) days after the date of the election.
Section 7. Challenges of Election Results.
Any member of the Ho-Chunk Nation may challenge the results of any election by filing suit in the Trial Court within ten (10) days after the Election Board certifies the election results. The Trial Court shall hear and decide a challenge to any election within twenty (20) days after the challenge is filed in the Trial Court.
HO-CHUNK NATION ELECTION CODE, 2 HCC § 6 (amended Jan. 8, 2013)
Subsec. 2. Purpose and Construction. The Election Code (2 HCC § 6) is enacted to provide basic rules and establish election procedures to ensure that all elections are conducted in a fair and proper manner. The Election Code (2 HCC § 6) shall be interpreted liberally in order to accomplish this purpose. Substantial compliance shall satisfy the Election Code (2 HCC § 6). Technicalities shall not be used to interfere with, delay, or block elections or cause confusion or a loss of voter confidence in the election system.
Subsec. 5. Elections. The Constitution prescribes two (2) types of elections: General Elections and Special Elections. When three (3) or more candidates run for a seat in a General or a Special Election, there shall be a Primary Election and, if required, a Runoff Election as described in Section 5, paragraph d., below.
a. Primary Election.
(1) Primary Elections shall be held prior to the General Election and/or Special Elections in order to ensure compliance *215 with the majority vote requirement as provided in Section I, subparagraphs c. through e., above.
(2) If no candidate in any Primary Election receives more than fifty percent (50%) plus one (1) of the votes cast in such election, the two (2) candidates with the highest vote totals from the Primary Election (any candidate(s) tied with the lower of such totals) shall appear on the ballot in the Runoff Election.
(3) Any candidate who receives fifty percent (50%) plus one (1) of the total votes cast shall be deemed as the winner.
(4) Primary Elections shall be conducted in the manner prescribed by the Election Code (2 HCC § 6) and in accordance with the timetable adopted by the Election Board.
(5) Only Primary Elections may have write-in candidates.
b. General Elections.
(1) General Elections shall be held in accordance with Article VIII, Section 1 of the Constitution, which states: Section 1. General Elections. General Elections shall be held on the first Tuesday in June of odd numbered years. Offices of the Legislature, Executive, and Judiciary shall befitted at General Elections.
(2) No write-ins will be allowed in General Elections.
c. Special Elections. Special Elections shall refer to all elections other than the General Election including, but not limited to Redistricting/Reapportionment Elections, Recall Elections, elections to fill vacancies in the Legislature, Judiciary, and the Office of the President, and elections to decrease or increase the number of Legislators serving on the Legislature when required as a result of adoption of a District Plan as a result of a Redistricting Special Election. Special Elections shall be held in accordance with Article VIII, Section 2 of the Constitution, which states: Section 2. Special Elections. Special Elections shall be held when called for by the General Council, the Legislature, or by this Constitution or appropriate ordinance. In all Special Elections, notice shall be provided to the voters.
Subsec. 6. Election Board.
b. Duties and, Obligations of Election Board.
(1) Duties. The Election Board shall:
(a) Conduct all General and Special Elections in a fair and impartial manner.
(c) Ensure that all candidates meet the qualifications for office and/or verify that all documents to be true and accurate. Prior to an Election, the Election Board shall hold a meeting to certify that all candidates meet the qualifications for office and/or verify that all documents to be true and accurate. Background checks shall be done by the Ho-Chunk Nation Compliance Department or its designee.
(d) The Election board shall determine whether each candidate for elective office meets the appropriate qualifications listed in the Constitution and any other qualifications required under the laws of the Ho-Chunk Nation, including Section 8, subparagraph d., below, and the Ho-Chunk Nation Code of Ethics Act (2 HCC § 1).
Subsec. 10. Nominations.
b. Candidates Limited to One Office. A candidate may not run for more than one (1) elected office or seat in any single General or Special Election.[5]
*216 Subsec. 18. Challenges to the Election Results.
a. The results of an election may be challenged in accordance with Article VUI, Section 7 of the Constitution, which states:

See. 7. Challenges of Election Results. Any member of the Ho-Chunk Nation may challenge the results of any election by filing suit in Trial Court within ten (10) days after the Election Board certifies the election results. The Trial Court shall hear and decide a challenge to any election within twenty (20) days after the challenge is filed in Trial Court.

b. The person challenging the election results shall need to prove by clear and convincing evidence that the Election Board violated this Election Code (2 HCC § 6) or otherwise conducted an unfair election, and that the outcome of the election would have been different but for the violation. A filing fee as set forth by the Election Board shall be charged.
HO-CHUNK NATION RULES OF CIVIL PROCEDURE
Rule 55. Summary Judgment.
Any time after the date an Answer is due or filed, a party may file a Motion for Summary Judgment on any or all of the issues presented in the action. The Court will render summary judgment in favor of the moving party if there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law.
Rule 56. Dismissal of Actions.
(A)Voluntary Dismissal. A plaintiff may file a Notice of Dismissal any time prior to the filing of an Answer. The Complaint will be dismissed without prejudice.
(B) Involuntary Dismissal. After an Answer has been filed, a party must file a Motion to Dismiss. A Motion to Dismiss will be granted at the discretion of the Court. A Motion to Dismiss may be granted for a lack of jurisdiction; if there has been no Order or other action in a case for six (6) months; if a party substantially fails to comply with these rules; if a party substantially fails to comply with an order of the Court; if a party fails to establish the right to relief following presentation of all evidence up to and including trial; or, if the plaintiff so requests.
(C) Sua Sponte Dismissal. The Court, on its own motion, may move to dismiss an action if there has been no filing or other activity on the record for six (6) months, if a party substantially fails to comply with these rules, or if a party substantially fails to comply with an order of the Court. The Court shall give written Notice to all parties that the action will be dismissed after thirty (30) calendar days unless good cause is shown in writing prior to the end of the thirty day period. No further Notice is necessary for the Court to enter a dismissal.
Rule 61. Appeals.
Any final Judgment or Order of the Trial Court may be appealed to the Ho-Chunk Nation Supreme Court. The Appeal must comply with the Ho-Chunk Nation Rules of Appellate Procedure, specifically Rules of Appellate Procedure, Rule 7, Right of Appeal. All subsequent actions of a final Judgment or Trial Court Order must follow the HCN Rules of Appellate Procedure.
FINDINGS OF FACT
1. The petitioner, Joann Earth Maney, is an enrolled, elder member of the Ho- *217 Chunk Nation, Tribal ID# 439A006302, and maintains a mailing address of 5820 N. Mason, Chicago, IL 60646.
2. The respondent, Ho-Chunk Nation (hereinafter HCN or Nation) Election Board (hereinafter Election Board), is a constitutionally established entity, and maintains an address of 206 South Roosevelt Road, Black River Falls, WI 54615. Constitution of the Ho-Chunk Nation (hereinafter Constitution), Art. VIII, § 4.
3. On July 30, 2013, the Election Board conducted the Special Runoff Election.
4. Candidate Joann Earth Maney received 44 votes out of a total of 91 votes cast, amounting to 48.3516% of the tabulated votes. Candidate Robert V. Two Bears received 47 votes, amounting to 51.6484% of the tabulated votes. Ho-Chunk Nation Election Results Special Run-Off Election (July 31, 2013).
5. On July 31, 2013, the Election Board certified the Special Runoff Election results, thereby designating Mr. Two Bears as District V, Seat 3 Legislator-elect. Const., Art, VIII, § 6.
6. On August 8, 2013, the petitioner filed a timely election challenge. Id., § 7. The petitioner alleges a violation of the Ho-Chunk Nation Election Code (hereinafter Election Code), specifically that Robert V. Two Bears was erroneously allowed the ability to run for two (2) separate legislative seats within District V. Pet. at 1-2.
7. The parties stipulated to the following facts 1) Robert Two Bears ran for the March 5, 2013 General Primary Election, as a District V, Seat 1 candidate and 2) that Robert Two Bears ran for the July 9, 2013 Special Election, as a District V, Seat 3 Candidate. See Tr. (LPER, Aug. 27,-2013, 11:39:15 a.m. CDT).
8. Mr. Two Bears was not declared the winner of the March 5, 2013 General Primary Election, as Ms. Kathyleen Lone-tree-Whiterabbit received a majority vote. See Ho-Chunk Nation General Primary Election Results, March 5, 2013, available at http://www.ho-chunknation.com/7Page Id=1075,
9. Kathyleen Lonetree Whiterabbit testified that she served as a legislator and specifically worked on the Election Ordinance and Election Code. She further indicated that the Ho-Chunk Nation Legislature meant to ensure that individuals could not run within the same legislative cycle. See Tr. (LPER, Aug. 27, 2013, 11:48:45 a.m. CDT).
10. Chairperson Whitehorse testified that the candidates simply chose a seat within their respective district, and the candidates do not know who is running for other seats for certification. See Mot. Hr’g (LPER, Aug. 22,10:26:40 CDT).
11. Kathyleen Lonetree Whiterabbit testified that as a candidate, she chose the seat she ran for within District V without information or guidance from the Election Board, although she was able to use personal knowledge to ascertain which seat would be open. Tr., 01:15:10 p.m. CDT.
DECISION
The petitioner filed an election challenge to the results of the July 30, 2013 Special Runoff Election. In particular, the petitioner alleges a violation of the Ho-Chunk Nation Election Code, specifically that Robert V. Two Bears was erroneously allowed the ability to run for two (2) separate legislative seats within District V. Pet. for Administrative Review (hereinafter Pet.) (Aug. 8, 2013) at 1-2. The petitioner requests that the Court “declare Joann Earth Maney the legislator for *218 “District 5, Seat 3.” Pet. at 3.[6] The petitioner did not contend that the outcome would have been different but for the violation, but if the petitioner were to prevail, then it is implicit that the outcome would have been different.
A challenging party must “prove by clear and convincing evidence that the Election Board violated th[e] Election Code or otherwise conducted an unfair election, and, that the outcome of the election would have been different but for the violation.” Election Code, § 6.18b (emphasis added). The Ho-Chunk Nation Supreme Court has confirmed that the Court must adjudge election challenges “to decide if the requirements of Section 14.01(b) were satisfied.”[7] Demetrio D. Abangan et al. v. HCN Election Bd., SU 02-02 (HCN 5.Ct., Mar. 25, 2002) at 4. In the instant case, the petitioner failed to demonstrate that the Election Board violated the Election Code, however the Election Board may be perceived as conducting “an unfair election.” As the findings of fact attest, the petitioner did not offer adequate testimony or other evidence capable of satisfying this burden while reading the Election Code in pari materia.
1. This Court has jurisdiction to reach the merits of the case.
The respondent argued for dismissal in the current case primarily on the grounds that the Court lacks jurisdiction, as is appropriate under the Ho-Chunk Nation Rules of Civil Procedure (hereinafter HCN R. Civ. P.), Rule 56. This lack of jurisdiction was argued by the respondent to be a consequence of the petitioner’s failure to file her election challenge within the ten days of an election certification, as is required by the Constitution and Election Code. See Const., Art. VIII, § 7; Election Code, 2 HCC § 6.18a. Although the respondent concedes that the petitioner’s petition was timely in relation to the general election, it argued that the issue in question instead concerned only the certification of primary results, and that the petitioner’s pleadings were too late to maintain an election challenge in relation to that particular election.
The respondent referenced cases in which a primary election was challenged within the ten day limit given by the Election Code, but it has not offered the Court a case in which the petitioner failed a challenge to a candidate’s qualifications because of a lack of timeliness even while being within ten day limit as counted from the runoff election. Sallaway v. HCN Election Board, CV-07-27 (HCN Tr.Ct. May 27, 2007); Two Bears v. HCN Election Board, SU 13-02 (HCN S.Ct. May 20, 2013). Similarly, while the Court’s own research has found at least one case dismissed under the above-referenced provisions, that challenge concerned particular events on the day of the primary election, not questions of law underlying a candidate’s qualifications for both the primary and the subsequent general election and is therefore not controlling. Id.; Greendeer v. HCN Election Bd., CV 97-65 (HCN Tr.Ct. May 8, 1997). The petitioner, for her part, has not supplied case law showing a case in which a petitioner successfully challenged a candidate’s qualifications only after the general election.
*219 Furthermore, the Court does not read the language of either the Election Code or the Constitution as clearly requiring it to adopt the respondent’s interpretation. The provisions clearly require any challenges to be made within 10 days of the election they challenge, but the respondent’s argument is derived from their interpretation of the election process, not the explicit text of any law.
A ten day “statute of limitations” is an extraordinary limitation on a cause of action, but the “extraordinariness” of this particular one is clearly justified if it is understood to be in context: the drafters of the Constitution wished to avoid situations where the true holder of an office was unclear, unknown, or contingent on a judicial determination. They achieved this end by requiring a process that resolved— or, at the very least, initiated—election challenges before new office-holders were to be seated.[8]
While no one would dispute that the sooner an election challenge is resolved, the better it is for all parties and the Nation as a whole, the respondent’s theory would take away petitioner’s—and other tribal members’—right to object to Mr. Two Bear’s candidacy ten days after the certification of the primary on July 20. This was ten days before the runoff election that would make Mr. Two-Bears a legislator-elect and over a month before he was to be seated. This interpretation strikes the Court removing tribal members’ constitutional election challenge rights far earlier than is necessary.[9]
Under the respondent’s theory, the petitioner’s ability to contest the election would have expired while she was still a candidate for that race (in the run-off election) and, hypothetically, could have subsequently won that race and rendered this case moot. Although all tribal citizens hold a right to challenge an election, most election challenges are in fact initiated by a contender for an elected position, as was the ease here. As a result, while tribe members enjoy standing without the need for any particularized injury, election challenges in fact generally are only made after such an injury has occurred.
The respondent suggested that there are valid policy reasons for such a requirement, namely the benefit of avoiding protracted election challenges, but absent clear constitutional or statutory language, the Court does not wish to restrict a tribal member’s constitutional rights on policy grounds. Furthermore, although this Court in no way wishes to imply that *220 injury-in-fact is required to initiate an election challenge, as the Constitution is very clear on that, it is reluctant to adopt an interpretation that would require either injunctive relief or full adjudication before any such injury arises at all.
i. The respondent has a duty to conduct fair elections, and the petitioner has a right to challenge any election for unfairness.
Elections may be challenged not only due to violations of the Election Code, but also on the grounds of the Election Board having “otherwise conducted an unfair election.” Election Code, § 6.18b. Even if the Court agreed with the respondent that the petitioner’s right to challenge the violation of 2 HCC § 6.10b expired prior to the filing of this petition, it would still decline to grant this motion to dismiss. This is because allowing an unqualified candidate to run against a qualified one is arguably unfair to the latter and to the electorate at large. Under this interpretation, a “clock” started ticking when the respondent allegedly violated the Election Code by certifying Mr. Two Bears to run for a second seat. The petitioner had only ten days from the certification of the nomination results to file her petition, which she did not. Her constitutional right to object on those grounds elapsed.
However, the respondent’s requirement to run a fair election by not certifying unqualified candidates is not subject to any 10 day limit, but is a continuing duty under 2 HCC § 6.6b(l )(a), (c), and (d).[10] Therefore, if Mr. Two Bears was allowed to illegally run for two seats simultaneously as is alleged by the petitioner, then the run-off election was arguably unfair whether or not petitioner had a right to challenge his presence. As a result, upon certification of the run-off results, a second clock may have begun ticking—this one not being based on violation of any particular provision of election code (for her cause of action on that ground had elapsed), but rather on the “or otherwise conducted an unfair election” alternative grounds of 2 HCC § 6.18b. While the question of whether such an election is unfair remains open, the openness of this question is sufficient to reject the respondent’s challenge of the Court’s jurisdiction.
2. The petitioner’s legal contentions lack sufficient merit for this Court to order a new election.
The Court believes that this is a question of legal interpretation. The Election Code states, “[a] candidate may not run for more than one (1) elected office or seat in any single General or Special Election.” Election Code, 2 HCC § 6.10b. The petitioner wished to advance the interpretation that the Court should disallow a candidate to run, when it involved the same election cycle. Specifically, the March 20, 2013 General Election and the July 9, 2013 Special Election were in fact interrelated and were a hybrid election.
The plain language of the Election Code, which the Court focuses on, is “[a]ny single General or Special Election.” This language could have read “[a]ny single election cycle” or “[a]ny single election year.” Absent such language, however, the Court must assume that the Legislature intended a distinction though its disjunctive language. The petitioner urges the Court to combine the elections togeth *221 er. However, simple sentence construction disallows this interpretation. For example, if the Election Code of Fictitious Nation had a provision, which stated, “a voter may not cast a vote for more than one (1) candidate in any single General or Special Election.” The voter would not presume that the elections were combined. In such a case, the voter would not presume that he or she could only vote once in one of the elections, and be, for example, precluded from voting in the Special Election because he or she had already voted in the General Election. The defendant, Election Board, asserted that it was following the Supreme Court directive of holding a Special Election, and General Election and Special Election are specifically defined as separate. Mot. to Dismiss Hr’g (LPER, Aug. 22, 2013, 10:19:50 CDT); Tr. (LPER, Aug. 27, 2013, 1:13:16 CDT); See Two Bears v. HCN Election Board, SU 13-02 (HCN S.Ct., May 20, 2013). Even if the Court did not believe this decision could be reached by the plain language of the statute, it could not endorse the petitioner’s interpretation due to the statutory construction guidelines given to it by the Legislature.
In interpreting statutes, courts often turn to legislative history. The petitioner attempted a method novel to this Court to find legislative history through the oral tradition by calling a legislator, Kathyleen Lonetree-Whiterabbit, as a witness to testify about the drafting of the Election Ordinance or Election Code. According to Ms. Lonetree-Whiterabbit, this part of the Election Code was drafted in response to her concerns over the possibility of “an individual ... running for more than one seat when there is more than one available in their district.” (LPER, Aug. 27, 2013, 11:53:50 a.m. CDT). Unfortunately, as defense counsel pointed out at the time, this innovative method remains of limited use. It gives the Court only the impressions of a single legislator, not of the entire legislative body or even a substantial sample of it. It also is not contemporaneous with the actual enactment of the provision, and retains flaws of other testimony from events that occurred more than a decade in the past.[12] The testimony was valuable but its persuasiveness was tempered by the fact that foundation could have been by the secretary, or alternatively the official records of the Nation’s legislature.
Furthermore, western traditional forms of legislative history were not available in this case. The Court’s own research turned up at least one trial court case, Miller v. HCN Election Board, wherein the grounds of a similar prohibition against running for multiple seats were explored. Miller v. HCN Election Bd., CV 01-57 (HCN Tr.Ct. May 24, 2001). Unfortunately, it is not clear whether these principles came from the legislature or the court itself, and both the code in question and the legal issue were substantially different from the present case.
Although the Court was not able to utilize legislative history to resolve any ambiguities here, the Legislature nonetheless provided guidance directly in the Election Code. The Election Code provides that “[sjubstantial compliance shall satisfy the Election Code ... Technicalities shall not be used to interfere with, delay, or block elections or cause confusion or a loss of voter confidence in the election system.” Election Code, § 6.2. The Court inter *222 prets this as granting some degree of deference to the respondent, and in particular requiring it to only overturn the results of an otherwise valid election when there is a clear violation of the Election Code or the Constitution.
The Court is sympathetic to petitioner’s assertions regarding the fairness of the process. Although, the Court does not hold that Robert Two Bears ran for two offices within a single election as defined by the Election Code, neither party denies that he ran for two different offices within the single year of 2013. The Court is dismayed over how little distinction there is between seats within a district. Although it is outside the scope of this case, the informal, haphazard, and overly secretive system by which candidates choose which the seat to run for within a district described by the Election Board, strikes this Court as error-prone at best and vulnerable to abuse at worst. See Mot. Hr’g (LPER, Aug. 22, 10:26:40 CDT); TV., 01:15:10 p.m. CDT.
However, the Court is also sympathetic to the rights of District V’s voters to be represented in the Ho-Chunk Legislature. If this decision ordered a new election, the District’s voters would face months without any representation whatsoever, and the burden of voting in a third election within a six month time span. Public interest would not necessitate another election, as District V has chosen their representative.
3. The petitioner’s requested relief would require a clearly unconstitutional action by this Court.
In her petition, the petitioner requested that the Court “[djeelare Joann Earth Ma-ney the legislator for seat 3, dist. 5 at large area and request the court to indefinitely postpone the swearing in ceremony until all legal remedies are exhausted.” However, the Constitution clearly requires all legislators to have received a majority vote of their district’s eligible voters Const., Art. V, § 6. The Nation’s Courts have repeatedly and strictly interpreted this provision.[13] Were the Court to directly seat the petitioner as a legislator, it would be violating the Constitution. As a result, if the Court were convinced of the merits of the petitioner’s case, it would be forced to implement an alternative remedy.
BASED UPON THE FOREGOING, the Court denies the petitioner’s election challenge. The Court finds that a challenging party must “prove by clear and convincing evidence that the Election Board violated th[e] Election Code or otherwise conducted an unfair election, and that the outcome of the election would have been different but for the violation.” Election Code, § 6.18b (emphasis added). The Court does not find that the Election Board violated the Election Code. Although, the election, at first blush, may appear unfair, coupled with timing, public interest, and the requested relief, the Court shall not set aside the election results. The parties retain the right to appeal this final judgment pursuant to the Special Rules for Election Challenges. HCN R. Civ. P. 80.

. Although this was not the most proper form of petition, the Court accepted it under the procedural leniency granted to pro-se litigants. See Melinda A. Lee v. Majestic Pines Casino, Mktg. Dep’t, CV 99-91 (HCN Tr.Ct. Apr. 3, 2000). This Court has previously applied this rule in the context of election challenges (although in that case it was a question of damages for frivolous challenges). Decorah v. HCN Election Bd., 9 Am. Tribal Law 454 (HCN Tr.Ct.2011) (dismissal order).

. The Ho-Chunk Nation Rules of Civil Procedure (hereinafter HCN R. Civ. P.) permit the Court to serve the Complaint upon the DOJ when the plaintiff/petitioner names as a party either a unit of government or enterprise or an official or employee being sued in their official or individual capacity. HCN R. Civ. P. 27(B).

. The Court was unable to render its decision regarding the Motion to Dismiss; however the arguments are adequately addressed within the Decision portion of this judgment.

. The Court recognizes that this was approximately 30 minutes later than noticed and anticipated, as the Court had another hearing, which was not concluded by 10:30 a.m. Although, the Court began at 11:00 a.m., the Court took an additional recess at 12:00 p.m., in order to conclude the ancillary case. The Court reconvened at approximately 1:00 p.m. to conclude Trial.

. The Court wishes to call attention to the fact that both parties mistakenly cited this provi *216 sion of the Election Code due to a formatting error in the copy of the Code currently hosted on the Ho-Chunk Nation's website. While this error is completely understandable, this (2 HCC § 6.10b) is the proper citation.

. The petitioner also requests that the Court "indefinitely postpone the swearing in," but the petitioner neither made this request verbally on the record, nor did she articulate the standards for an injunction. Nonetheless, given the outcome of the instant case coupled with the omission, the Court declines to enjoin the Swearing In Ceremony.

. The Supreme Court cited to the predecessor version of the Election Code, which contained a nearly identical challenge provision.

. The Supreme Court has remarked on the need for this requirement: "Indeed, the Constitutional requirements of a rapid decision also impinge upon the Judiciary ... in order to not unduly delay the seating of duly elected representatives of the people.” Funmaker-Romano et al. v. HCN Election Bd. SU 05-08 at 3. See also Roberta Greendeer v. HCN Election Board, CV 97-65 at 7, for a discussion of the rationale for the 10-day Constitutional time limit, balancing the need for speed with the importance of sound and trustworthy elections.

. While the Court would feel differently if the 10-day requirement had been developed alongside the Nation’s primary system, it was not. While the Constitution describes and in general terms defines the nature of General and Special Elections, it does not mention Primary (or Runoff) elections. Instead, primary elections were initially mandated through judicial interpretation of the HCN Constitution’s requirement that ”[m]embers of the Legislature shall be elected by a majority vote of the eligible voters from their respective Districts.” Warner et. al. v. HCN Election Bd., CV-03-06, 09-10 (HCN Tr. Ct., July 3, 1995) (Interpreting Ho-Chunk Nation Constitution, Art. V, § 6); see also Mudd v. HCN Election Bd., 1 Am. Tribal Law 202 (HCN Tr.Ct. 1997). This judicial mandate was then written into the Election Code. Greengrass v. HCN Election Bd., CV-99-28 at 1 (HCN Tr.Ct. Apr. 29, 1999).

. Although the defendant Election Board argued in court that their duties were discharged upon certification of the primary results and that its tasks for the run-off election were limited to putting the top vote-getters on the ballots and otherwise running the election, there is no limitation on their general duties described in the Election Code.

. Representative Lonetree-Whiterabbit recalls drafting the provision in 2002. However, the aforementioned Miller case interpreted a provision that was at least substantially similar in 2001. There are many possibilities ior this minor discrepancy, but regardless of the reason it is indicative of the danger of relying on testimony from an approximate decade prior.

. For a sample of these opinions, see Supra n.9.